# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 04-60024-02** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **RAFAEL MEDINA SANTOS** | * | **MAGISTRATE JUDGE HILL** |

## MEMORANDUM RULING AND ORDER

On motion of the defendant, Rafael Medina Santos, a *Garcia*[1] hearing was held on August 28 and August 29, 2006 before the undersigned Magistrate Judge. The defendant, Rafael Medina Santos, his attorney J. Kevin Stockstill, Assistant United States Attorney J. Luke Walker, and Assistant United States Public Defender Wayne Blanchard, counsel for prospective government witness Bryan Hampton, were present on both days.[2] Daniel Stanford (with whom the defendant Santos conferred after the hearing on August 28) was present at the hearing on August 29, 2006.

## FACTUAL BACKGROUND

The facts as found by the undersigned at the *Garcia* hearing are as follows. During the pretrial conference before District Judge Doherty in this case on August 18, 2006, Assistant United States Attorney Bret Grayson advised the court and defense counsel that the government intended to call an unidentified co-operating witness who would testify that both defendants, Rafael Medina Santos and Kamel Kamal Aquino, made incriminating statements

---

[1] *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975).

[2] AUSPD Blanchard was appointed *sua sponte* by the undersigned to represent the witness Hampton when the *Garcia* hearing was set. [rec. doc. 139].

to him while all three were incarcerated at the Lafayette Parish Correctional Center.

On August 23, 2006, Stockstill received a telephone call from Bryan Hampton. Stockstill had previously represented Hampton on federal Hobbs Act charges for which Hampton was sentenced to serve fifteen years in the custody of the Bureau of Prisons. In that case, the court recommended that the Bureau of Prisons assign Hampton to a facility as near as possible to Bandon, Oregon. This special recommendation was made because Hampton's father, a resident of Bandon, Oregon, is a terminal cancer patient. By placing Hampton near his father's residence, the court hoped to facilitate visitation by Hampton's father during Hampton's federal incarceration. *See United States v. Hampton*, 6:05-cr-60054 (W.D.La. 2005).

However, before he could be transferred into the custody of the Bureau of Prisons, Hampton was convicted on state forgery charges in the Fifteenth Judicial District Court for Lafayette Parish, Louisiana, for which he was sentenced to serve ten years in the custody of the Louisiana Department of Corrections. Stockstill did not represent Hampton in the state proceedings. However, at Hampton's request, Stockstill has been attempting to convince the state prosecutor to allow Hampton to be transferred into federal custody so that he can be incarcerated in a federal facility near Bandon, Oregon, rather than be incarcerated in Louisiana. In that regard, Stockstill has consulted with Hampton on various occasions, obtained pertinent documents for Hampton and has contacted the state prosecutor on several occasions. Stockstill's efforts on Hampton's behalf continue. In fact, it was to discuss

Stockstill's efforts on his behalf that prompted Hampton to call Stockstill on August 23. It was during this telephone call that Stockstill learned that Hampton was the co-operating government witness that AUSA Grayson had disclosed at the pre-trial conference on August 18. It is clear that Stockstill is currently providing professional legal services to Hampton. The fact that Stockstill is providing these legal services to Hampton on a *pro bono* basis does not alter the nature of the professional attorney-client relationship between them.

The basis of Hampton's proposed trial testimony in this case is contained in a DEA Form 6, which was entered into evidence, under seal, at the August 28 hearing as court exhibit number 1. That report was drafted by DEA Special Agent George Carcabasis after his interview with Hampton. In order to ascertain more fully the nature and content of Hampton's anticipated testimony, the undersigned ordered the courtroom cleared, excepting only counsel for the government. Thereafter, the court inquired of SA Carcabasis, under oath, what he expected the testimony of Hampton to be. It is unnecessary to recite the substance of Special Agent Carcabasis' testimony here.[3] It is sufficient for these purposes to note that Mr. Stockstill, as attorney for the defendant Santos, would be required to cross-examine his client, Hampton, at Santos' trial. It is likely that if Hampton's testimony is helpful to the government, that Hampton will request relief from his federal sentence under Rule 35, FRCrP. Furthermore, Hampton may well request federal authorities contact the assistant district attorney handling his state charges to assist him in his efforts to be transferred into federal custody.

---

[3] The portion of the transcript containing the testimony of Special Agent Carcabasis was ordered sealed.

In cross-examining Hampton at Santos' trial, Stockstill would owe professional loyalty to both the defendant, Santos, and to the hostile adverse witness, Hampton. It would be in Hampton's best interest for his testimony at Santos' trial to be believed so that (1) the government would be more likely to act favorably on his Rule 35 request, and (2) the government would also be more likely to contact the state authorities on his behalf. On the other hand, it would obviously be in Santos' best interest for Hampton's testimony at trial to be disbelieved. Thus, Stockstill's cross-examination of Hampton at Santos' trial would be a clear example of an attorney having divided loyalties.

Mr. Blanchard advised the court that he had discussed the situation with Hampton. Mr. Blanchard said that Hampton looks at Stockstill as his attorney with respect to the state charges and that Hampton thinks very highly of Stockstill because he feels that Stockstill has done more for him on the state charges than did the lawyer appointed to represent him in state court. Blanchard further said that Hampton wants Stockstill to continue to represent him on the state charges, and that Hampton does not want to harm Stockstill in any way, financially or otherwise.

The government argued that, considering the ongoing relationship between Stockstill and Hampton, it was concerned that Hampton might "tailor" or "qualify" his testimony so as to avoid any potential adverse consequences to Stockstill and thus to his client, Santos. In short, if Stockstill is permitted to continue representing Santos, the government fears that the testimony of Hampton might be materially different than it would be if Santos was

represented by other counsel.

In light of the continuing professional relationship between Stockstill and the witness Bryan Hampton, the nature of the anticipated testimony of Hampton, the potential benefits to be gained by Hampton if he assists the government and the professional obligations owed by Stockstill both to the defendant Santos and the witness, Hampton, the undersigned found that an actual conflict existed in Mr. Stockstill's continued representation of Mr. Santos in this case.

Accordingly, the undersigned personally addressed the defendant Santos to determine whether or not Santos would waive his right to conflict-free counsel in accord with the procedures set out in *Garcia*. Before making his decision, Santos requested that he be permitted to consult with independent counsel. Santos informed the court the he intended to consult with attorney Daniel Stanford. Therefore, the undersigned recessed the hearing of August 28 until the afternoon of August 29 to allow the defendant Santos to consult with Mr. Stanford.

When the hearing re-commenced on August 29, Mr. Stockstill informed the court on behalf of Santos that Santos refused to waive his right to conflict-free counsel. The court then personally addressed the defendant Santos, and Santos confirmed that he would not waive his right to conflict-free counsel.

## LAW AND ANALYSIS

The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defence." U.S. Const. amend. VI. The right to counsel secured under the Sixth Amendment includes the right to counsel of choice as one element of this basic guarantee. *United States v. Gonzalez-Lopez*, -- U.S. --, 126 S.Ct. 2557, 2561 (2006); *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692 (1988); *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58 (1932). The right to counsel guaranteed by the Sixth Amendment additionally includes the right to conflict-free representation. *Holloway v. Arkansas*, 435 U.S. 475, 483-484 (1978); *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097 (1981). "A conflict of interest exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005). "The right to counsel's undivided loyalty is a critical component of the right to assistance of counsel; when counsel is burdened by a conflict of interest, he deprives his client of his Sixth Amendment right as surely as if he failed to appear at trial." *Bonin v. California*, 494 U.S. 1039, 1044, 110 S.Ct. 1506 (1990) (Marshall, J., dissent). Thus, when an issue of conflict of interest arises, the court must ensure that the conflict is either eliminated or waived. *United States v. Edwards*, 39 F.Supp.2d 716, 743 (M.D.La. 1999) citing *United States v. Lussier*, 71 F.3d 456, 461 (2d Cir.1995). If the conflict cannot be eliminated or waived, the attorney must be disqualified. *Id.*

In this case, it clear that the continued representation of Santos by Stockstill presents an actual conflict of interest. *See Infante*, 404 F.3d at 392-393 (finding a conflict of interest when defense counsel cross-examined former clients who testified against counsel's current client); *see also Hoffman v. Leeke*, 903 F.2d 280, 285-287 (4th Cir. 1990) (finding that an attorney labored under a conflict of interest when he cross-examined one client as an adverse witness in the related trial of another client) and *United States v. Martinez*, 630 F.2d 361, 362-363 (5th Cir. 1980) (finding a conflict when an attorney previously represented a witness who testified against a current client in a related matter).

Mr. Stockstill has a conflict in this case. Santos has refused to waive his right to conflict-free counsel. Accordingly, the court is left with no choice. Mr. Stockstill must be disqualified from further representing Rafael Medina Santos in this case. Any other result would violate Santos' Sixth Amendment right to conflict-free counsel.

Furthermore, in this case, the failure to remove Mr. Stockstill as counsel for Santos might well deprive the government of its right to a fair trial. Clearly, Hampton holds Stockstill in very high regard and might well "tailor" his testimony to avoid hurting Stockstill's client, Santos. Furthermore, Hampton might well be concerned that if his testimony hurt Stockstill's client, Santos, that Stockstill might, because of that, cease his *pro bono* representation of Hampton on the state charges. Again, that might very well cause Hampton to "tailor" or "qualify" his testimony regarding Santos to avoid the possibility of losing Stockstill's help on the state charges.

Like the defendant, the government is also entitled to a fair trial. The Supreme Court, in *Gonzales-Lopez* has very recently re-affirmed the right of trial courts to balance the right of counsel of choice with the needs of fairness and the interest in insuring that criminal trials are conducted within the ethical standards of the profession. *Id*. at 2565-2566. Here, that balancing would also require the court to remove Mr. Stockstill from this case.[4] Therefore;

**IT IS ORDERED** that J. Kevin Stockstill be, and is hereby, **removed** as counsel of record for Rafael Medina Santos in this case.

**IT IS FURTHER ORDERED** that Rafael Medina Santos is granted **ten (10) days** within which to retain new counsel to represent him in this case, or, in the alternative, to apply to this court for appointment of counsel.

Signed this 29th day of August, 2006 at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

---

[4] The court feels compelled to note that this conflict arose due to no fault of Mr. Stockstill. As soon as Mr. Stockstill became aware of the potential conflict, he notified the court and promptly moved the court for a *Garcia* hearing. Mr. Stockstill has at all times in this case acted in accordance with the highest ethical standards, and has conducted himself in a most exemplary manner.